## Jack *versus* Shoenberger.

1. Under the Act of 1705 a will might be republished by parol so as to pass real estate acquired subsequent to the making of the will.

2. A testator made his will in 1828 with a residuary clause in favor of his brother, which embraced all his estate and everything he might die possessed of. He died in 1843, having, it was alleged, republished the will by parol after having acquired the land part of which was in controversy: *Held,* that the after acquired land passed under the will, whether the will was within the purview of the Act of 1833 or not. If within the Act parol republication was unnecessary—the 10th section of that Act would pass the land; if not within it parol republication of the will passed the land.

ERROR to the Common Pleas of *Westmoreland county.*

This was an action of ejectment to August Term, 1849, by John H. Shoenberger and Margaret his wife, late Margaret Cust, in her right, and Florinda Blair, late Florinda Cust, *v.* William Jack. The defendant having died, William Jack and others were substituted. It was brought to recover the one-third of a tract of land containing 77 acres, situate near to Greensburg.

Both parties claimed under *Matthew Jack.* The females, who were plaintiffs, claimed as heirs at law of said Matthew Jack, who died, seised of the land, on 3d October, 1843, leaving neither wife nor lawful issue, but leaving two brothers, viz., William, against

[Jack *v.* Shoenberger.]

whom the ejectment was brought, and Wilson; and a sister, Mary Cust, since dead, whose heirs were plaintiffs in this case.

Matthew Jack, by his will, dated 19th day of September, 1828, devised to his brothers, Henry and Wilson Jack, his interest in several lots in Kittaning, and lastly, after payment of his debts, he devised "the whole rest and residue" of his estate, "whether real or personal," "and everything" at the time of his death he might be "possessed of, to his brother, William Jack, and his heirs." The will was proved on 4th November, 1843.

The property, part of which was in dispute, was acquired by Matthew Jack, *after* the making of his said will; it was acquired by him between 1831 and 1837.

The *defendants*, as heirs of William Jack, the devisee, claimed under the said will and under testimony and evidence offered to show a parol republication of the will. On the trial it was, *inter alia*, offered to give evidence, on their part, in order to show that Matthew Jack, after the making of the will, had conveyed to his brothers, Wilson and Henry, the lots in and near to Kittaning, and that he had requested another will to be drawn, leaving out the names of Wilson and Henry, and making William Jack sole devisee; and that such a will was drawn but perhaps from accident or neglect was never signed by him.

The testimony of various witnesses was also offered in order to show that the testator, after he had acquired the property part of which was in dispute, said that William Jack was to have all of his property, and that Mrs. Cust was not to have any of it.

BURRELL, J., decided that parol evidence was inadmissible to prove a republication of the will; and he rejected the evidence offered with that view, and instructed the jury to find for the plaintiffs.

Verdict for plaintiffs.

It was assigned for error, that the Court erred in rejecting the testimony and evidence offered to show a parol republication of the will. The questions were stated to be, *First*, Whether a will can be republished *by parol*; and if this were decided in the negative, then, *Secondly*, Whether the rule applies to a will made *prior* to the Act of 1833.

*Stokes*, with whom was *Foster*, for plaintiffs in error.

*Cowan*, for defendants in error.

The opinion of the Court was delivered by

WOODWARD, J.—On the 19th day of September, 1828, Matthew Jack made his will in writing, wherein, after certain devises to his

[Jack *v.* Shoenberger.]

brothers Henry and Wilson Jack, he employed the following language: "I give and bequeath the whole rest and residue of my estate, whether real or personal, and everything at time of death I may be possessed of, to my brother William Jack, and his heirs." He died in 1843, seised of the land in controversy, but did not own it at the date of his will, having acquired it somewhere between 1831 and 1837. On the first trial of the cause a parol republication of the will was proved after the acquisition of this land, and the devisee had a verdict; but when it came into this Court, it was decided that since our statute of wills of 8th April, 1833, there can be no republication by parol, and that the testator having died after the date of the Act, left his will within the purview of it. The judgment was accordingly reversed, and on retrial the parol evidence of republication was rejected, and he was held to have died intestate as to this portion of his estate. The record is now brought up again to have this opinion reconsidered.

It is alleged that the late Judge COULTER took no part in the decision in consequence of having been the legal adviser of the testator, and a witness to the fact of republication, and that Mr. Justice BELL dissented from the judgment of the majority. The opinion of Chief Justice GIBSON is also said to have been marked not to be reported, and is not to be found among the files of the Court. We lay these allegations out of view, because we have before us a copy of the opinion duly certified by the prothonotary, on the 17th of November, 1851, and we recognise it as the opinion of the Court in this case. More than this: We entertain for it all the respect which is due to the distinguished judges who preceded us on this bench, and if a majority of the Court, as now constituted, cannot acquiesce in the conclusions of its learned author, it is not for want of a careful consideration of the reasons advanced in support of those conclusions. There is nothing in our office more pleasant than to follow in the path illuminated by that great intellect; but we are sometimes compelled to depart from it in order to get back upon the beaten track of the law. Notwithstanding the 6th section of the Act of 1705, republication of a written will might under that Act be proved by parol, so as to pass real estate acquired subsequently to the date of the will. Subscribing witnesses to the execution of the will were not required, and as *publication* might be proved by parol, so might republication, for the rule was that the same solemnities but no more, were required to republish as to publish it: Havard *v.* Davis, 2 *Binn.* 415; Jones *v.* Hartley, 2 *Wh.* 103. And such was the law in England, until the 6th section of the Act of 29 Ch. 2, cut up parol republication altogether; but this statute was never extended to Pennsylvania.

When Matthew Jack, therefore, made this will, it was capable of republication by parol; and had he subsequently made another

[Jack v. Shoenberger.]

will, with all due solemnities, it might have been superseded by a parol republication of this one. And he did republish it, say the plaintiffs in error, after he purchased the land in controversy. They offered to prove such republication, but according to the opinion of Chief Justice GIBSON, it may not be done because our Act of 1833, like the statute of 29 Ch. 2, has cut up parol publications, and this will is within the purview of the Act because the testator died after the Act was passed. These are the propositions that ruled this case, and it is apprehended that if both were admitted the judgment was improperly reversed. But of that hereafter.

As to the first of these propositions, it is doubtful whether the legislature meant more by the 13th section of the Act of 1833, than to re-enact the 6th section of the Act of 1705; and if this were all, the established construction would require us to say, that it does not prevent parol republication: Campbell v. Jamison, 8 Barr 498. But this point is not worth investigating fully, because we think Judge GIBSON fell into error when he ruled that this will was within the Act of 1833. If that Act is not the law of this will, then it is immaterial whether the 13th section was intended as a re-enactment of the 6th section of the Act of 1705, or as an introduction of the 6th section of the statute of 29 Ch. 2. Is then this will within the purview of the Act of 1833?

In Mullen v. McKelvy, 5 Watts 400, the testator made his will before the Act of 1833, and died afterward; and it was admitted that the execution of the instrument must be judged of by the law as it stood at the time of its execution, and not at the death of the testator. The same point was assumed in Murray v. Murray, 6 Watts 356. Now republication is part of the formalities of the instrument as much as publication is; and if signing, witnessing, and publishing the will, are to be judged of by the law as it stands at the time, it would seem very unreasonable to introduce a higher rule in regard to republication. Even the statute of frauds requires no more solemnities for republication than for first execution, and this has been the universal rule. In the argument of counsel it is said that republication is the making of a new will, and it is insisted that the law at the time of the act done governs the act. If republication were indeed the making of a new will, it would doubtless be governed by the law of the time; but I apprehend republication is no more the remaking of the will, than publication is the making of it. Publication is necessary to the effect of a will, but we never say a devisee takes under the *publication,* but under the *will;* so republication is necessary to the effect of the will on after acquired land, but the devisee of such land takes under and according to the will itself. When a man republishes his will, the terms and words of the will are construed to speak with regard to the pro-

[Jack *v.* Shoenberger.]

perty the testator is seised of, and the persons named therein, at the date of republication, just the same as if he had had such additional property, or such persons had been in *esse*, at the time of making his will: *Powell on Devises* 616. In England, since the statute of frauds and perjuries, republication must be by re-execution of the will, or by codicil; but as a codicil does not, in republishing, give any new quality to a will, its operation being merely to extend the expressions used therein to the time of republication, a devise, not properly executed at its inception, will not be helped by a codicil, though that be executed pursuant to the statute of frauds: *Pow.* 619; Attorney-General *v.* Barnes *et al., Prec. in Chan.* 270; *S. C. Vernon* 597. This illustrates the distinction between republication and the making of a new will, and shows that republication is dependent on the will and unmeaning as a separate act. It is not, therefore, to have a separate rule. If a will made in 1828 be held within the purview of the Act of 1833, we give the Act a retrospective effect, which is never done except on the clearest evidence of legislative intention, and hence, in Mulloch *v.* Souder, 5 *W. & Ser.* 198, this Court refused to apply the 10th section of the Act to a will made before its passage. "It could only so apply," says Mr. Justice SERGEANT, "by giving the Act a retroactive effect, which will never be done where such does not expressly appear to be the design of the legislature; *but the Act will be left to operate on wills made and executed after the Act comes into operation.*" And let it be remarked that this was said in reference not to the formalities of execution, which in Mullen *v.* McKelvy it was admitted must be according to the law as it stood at the date of the will, but in reference to the construction of the Act as a rule of property.

We cannot understand how, in view of these authorities, it was decided that this will was to be governed by the Act of 1833. Judge GIBSON gives no reason except that the testator died after the Act, which we have seen was considered of no importance in Mullen *v.* McKelvy, and he cites no authority. The only authority cited by counsel, in support of his opinion, on this point, is that of Lewis *v.* Lewis, 2 *W. & Ser.* 456. There the will was executed in July, 1828, and revived by a codicil written on the same paper, in December, 1833, *after* the Act of 8th April, 1833, had gone into operation. Evidently forming but one instrument, as a will and codicil may, Carlton *v.* Griffin, 1 *Burrows* 546, they came necessarily within the Act, and the point ruled was, that the word "*obsolete*," written on the margin of the will, did not amount to a *revocation* of the will, because unattended by the attestation required by the Act. No question seems to have been made about that will being subject to the Act of 1833, and there was no question of *republication* in the case. This case, it is manifest, does

[Jack *v.* Shoenberger.]

not touch the point, and as the diligence of learned counsel has failed to discover any other, we may presume that none exists.

Unsupported by authority, and in direct conflict with those to which we have referred, the opinion of Judge GIBSON comes to us with something less than a binding obligation. Neither the maxim of *stare decisis*, nor the unfeigned respect entertained for our predecessor, nor our great reluctance to disturb the judgment settled in this very case, are reasons for our standing to an opinion which was itself a departure from the course of decision. We are, therefore, of opinion that this will is not within the purview of the Act of 1833, but is to be governed by the law as it was settled before that enactment, and that, consequently, the evidence of parol republication was improperly rejected.

But we intimated that if both the propositions of the opinion under review were admitted, they would not sustain the conclusion to which the Court attained when the cause was here before. If this can be demonstrated, we shall be right in reversing the judgment, even though wrong in all we have said hitherto.

Let it be granted, then, that this will is within the Act of 1833, and that the 13th section of the Act prohibits republication by parol. The 10th section of the Act, not noticed in Judge GIBSON'S opinion, is in these words: "The real estate acquired by a testator, after making his will, shall pass by a general devise, unless a contrary intention be manifest on the face of the will." The legislature doubtless intended this to remedy a decision made only ten days before, in the case of Girard's Heirs *v.* The City of Philadelphia, 4 *Rawle* 323, where it was held, for the first time in Pennsylvania, that real estate acquired after the making of a will does not pass under a general devise of the residue of the testator's real estate without a subsequent republication of the will, even where the testator, in addition to the general devise of the residue, declares in a codicil that it is his wish and intention that all the real estate he shall thereafter purchase, shall pass by the said will. Pursuing the letter of the 10th section, it may be said there is in Matthew Jack's will a general devise to his brother William Jack and his heirs, and there is no intention manifest on the face of the will that the real estate acquired after making his will, should not pass by that general devise. So far from manifestation of such intention, the words "rest and residue of my estate, whether real or personal, and everything at time of death I may be possessed of," imports a plain intention to pass whatever he might acquire, as well as what he then had. If then this will be within the Act of 1833, why does not the 10th section apply? It will not do to answer that this section was decided in Mulloch *v.* Souder *not* to be applicable to wills made before the date of the Act; because that decision proceeded on the ground that no such will is

2 N

[Jack *v.* Shoenberger.]

within the Act, and we are now contemplating the case as if that decision were repudiated, and as if it had been judicially settled that this will *is* within the Act.   The 13th section might well be held to forbid parol republication, since the 10th section had taken away the great, perhaps the only necessity for republication.   In 1833 after-purchased lands could not pass unless there was republication, but, says the Act of that year, they shall pass under a general devise no contrary intention being manifest, and then we will be done with parol republication.   Thus the 13th section became a fair sequence of the 10th, but to apply one section, and not the other, is to mar the harmony of the Act.   They are parts of the same Act, they took effect at the same time—are in *pari materia,* and dependent, one on the other, not only in fact, but in reason.   Without plain violation of the legislative will, we cannot disjoin what they have thus united.   Every rule of construction that we are in the habit of applying, demands that provisions thus knit together, and wrought into the texture of the statute, should be read together, and that if one of them be applied to a will dated before the Act, the other must be. ·  To say whether a particular case is within the purview of the Act, is an appropriate judicial duty; but to bring the case within it—to apply the 13th section and then ignore or refuse to apply the responsive provision of the 10th section, is a judicial precedent, which, however sanctioned, is by no means to be followed.   There are expressions in Judge GIBSON'S opinion, especially where he speaks of narrowing the field of parol evidence "*to cases of after purchased* lands," which indicate that he overlooked the 10th section altogether,   In the press and hurry of business, this is not improbable; and had he been spared to review his decision, he would, doubtless, have been "the earliest to discover his mistake, as well as the foremost to correct it."   This is the ground on which we intimated that the first judgment in this ejectment ought not to have been reversed, even in the view of the law which prevailed in this Court.   The fair, the necessary consequence of construing the Act of 1833, to apply to this will, would have been to leave William Jack in possession of the land, the very result which the Court below reached by other means. The whole case seems to come down to a proposition which may be stated thus—this will and all questions arising upon it stand upon the law as settled before the Act of 1833, and was capable of republication by parol—or else it is within the Act of 1833, and its terms are sufficient, under the Act, to pass real estate acquired subsequently to its date.   Either way the plaintiff in error would be entitled to hold the land.

That we may not be understood as deciding more than we intend, it is proper to add that we have not considered whether the evidence offered would amount to proof of republication.   That it

[Jack *v.* Shoenberger.]

tended to prove it is apparent, and therefore it was competent. The fact having once been found by a jury, and the evidence offered having been rejected, we are bound perhaps to presume, that it would again have been found had the evidence been received.

    Judgment is reversed and a *venire de novo* awarded.